## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Julie Withers and
Dawn Green

        Plaintiffs,

                              Case No:       2:19-cv-00115-LA

                              Americans with Disabilities Act ("ADA")
                              42 U.S.C. 12101 et seq.

        vs.

Milwaukee Brewers Baseball Club               and;
Southeast Wisconsin Professional Baseball Park District  and;
HSK Inc.                                    and;
NBJJ LLC                                  and;
Eppstein Uhen Architects, Inc.

        Defendants.

## AMENDED COMPLAINT

Plaintiffs, Julie Withers and Dawn Green ("Plaintiffs"), by counsel Law Offices of Paul A. Strouse and Law Offices of Thomas R. Napierala, bring this civil action under provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, et seq., and set out as follows.

## INTRODUCTION

Plaintiffs have brought this lawsuit for injunctive relief challenging the compliance of wheelchair accessible seating and the lines of sight not being qualitatively comparable to that of the general public as well as other access issues in and around Miller Park. Both Plaintiffs are long time fans of the Milwaukee Brewers and look forward to frequent outings to America's favorite pastime at Miller Park. Plaintiffs have

made outings on multiple occasions for many seasons and would like to continue doing so without encountering barriers to their enjoyment of the game. Plaintiffs are deprived of enjoyment of the game of baseball when compared to their fellow Brewers fans, who are ambulatory. The inferiority of these viewing experiences and lines of sight at Miller Park have caused the Plaintiffs to complain of physical discomfort at these seats (including neck pain, eye strain and headaches), but also their collective feelings of isolation, embarrassment, and anger at being effectively denied access to comparable qualitative seating and enjoyment, no access to the Aurora Health Care Bullpen, no access to take courtesy shuttles from distant parking lots, the navigation of the main inter-level ramp which is too steep, have defective or no access, and seating for Helfaer Field and The Sausage Haus and thereby suffer a disparate treatment in comparability, quality and access to ambulatory patrons. Plaintiffs are not getting a comparable "bang for their buck" when compared to ambulatory fans. Essentially wheelchair bound fans are typically relegated to comparably inferior sections of Miller Park that can be described as a "Wheelchair Ghetto." See _Independent Living Resources v. Oregon Arena Corp._ 982 F. Supp. 698, 712 (D. Ore. 1997) wherein the ADA issues at the Portland Trailblazers home arena is analogous to this very case).

While it is not the case that Miller Park has a malicious policy of discriminating against their mobility disabled fan base, it is the case that Miller Park's line of sight, seating and access are such that those fans who are wheelchair bound or otherwise mobility challenged are categorically discriminated against by the defendants violating the ADA. Put another way, mobility disabled Brewers fans are not getting a qualitatively comparable "bang for their buck" as ambulatory Brewers fans routinely do, when they spend their money at Miller Park as wheel chair bound patrons.

A. **Americans With Disabilities Act Accessibility Guidelines – ADAAG 4.33.3 ("Standard 4.33.3)**:

Title II and/or Title III of the ADA mandates that, in public assembly areas such as Miller Park, "wheelchair areas shall be an integral part of any fixed seating plan . . . and shall provide people with physical disabilities . . . lines of sight comparable to those for members of the general public." 28 C.F.R. Pt. 36, App. A § 4.33.3 (1994). The Plaintiffs bring this lawsuit based on the ADA and Standard 4.33.3's comparable-line-of-sight, seating integration and access requirements as applied to Miller Park's seating and wheel chair access.

### 1. Standard 4.33.3 Obstructed View - Lines of Sight:

Plaintiffs argue that consistent with both the regulatory language and purposes underlying the ADA and its implementing regulations a reasonable interpretation of Standard 4.33.3's comparable-line-of-sight requirement requires Stadium operators to provide patrons who use wheelchairs with a view of events-- including such factors as obstructions, viewing angles, and distance from the field -- that is similar or equal to the views offered to most other patrons in the facility. Under well-established legal principles and ADA regulations and standard(s) 4.33.3, Plaintiffs are entitled to substantial deference. In the context of Stadium design, the phrase "lines of sight" is a well-established term of art that encompasses factors affecting the nature and quality of the viewing experience, including visual obstructions, viewing angles, and distances from the screen. Furthermore, it must be assumed that both Major League Baseball (MLB) generally, and Miller Park in particular, have long agreed that views of the playing field can be qualitatively compared and that the regulation's use of the phrase "lines of sight" encompasses several factors including viewing angles. The Brewers are forbidden under the ADA to simply make only a few areas available to the mobility challenged that are comparable in seating and access as their fellow ambulatory fans enjoy. The mobility challenged fan should have a substantially comparable experience at Miller Park as the ambulatory fan.

3

## 2. Standard 4.33.3's Seating Integration Requirement:

Plaintiffs argue that this provision requires Miller Park to provide seating for physically disabled patrons that is among the seats where a majority of the other patrons routinely sit during events in a qualitatively comparable way. In Miller Park, the overwhelming majority of patrons can, and do, sit in all of the stadium sections. At Miller Park qualitatively comparable wheelchair seats which are afforded the same lines of sight and/or access which the ambulatory fans enjoy are available for wheel chair fans in very limited stadium sections. Additionally wheelchair bound patrons are effectively barred from entry to the Aurora Healthcare Bullpen and suffer from other access issues. The result of these violations results in the segregation and isolation of persons who use wheelchairs and their companions who choose to sit with them. The isolated nature of Miller Park's disabled seating has created what the ADA has sought to remedy, the creation of a "wheelchair ghetto". Given that Title III of the ADA and its implementing regulations were enacted to combat this very form of segregation and inequality, the Plaintiffs argument(s) are that the regulation's integration requirement fully comports with both the regulatory language and the ADA's anti-discrimination mandate and the plain reading of Standard 4.33.3's integration requirement should, therefore, be afforded substantial deference. Bearing that in mind Plaintiffs move this Court to order the removal of barriers at Miller Park which interfere with their enjoyment of the game when similarly situated to ambulatory fans.

## LEGAL AND REGULATORY BACKGROUND

Congress enacted the ADA in 1990 to remedy pervasive and continuous discrimination against persons with disabilities. See 42 U.S.C. § 12101(a)-(b); see generally PGA Tour, Inc. v. Martin, 532 U.S.

661, 674-77, 121 S. Ct. 1879, 1889-90 (2001). One of the ADA's primary purposes is, therefore, "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1).

During the congressional hearings preceding the passage of the ADA, reports, surveys and testimony offered from numerous witnesses made plain that "an overwhelming majority of individuals with disabilities lead isolated lives and do not frequent places of public accommodation." S. Rep. No. 116, 101st Cong., 1st Sess. 10-11 (1989). For example, testimony by the National Council on Disability summarized a then-recent national poll:

> The survey results dealing with social life and leisure experiences paint a sobering picture of an isolated and secluded population of individuals with disabilities. *The large majority of people with disabilities do not go to movies, do not go to the theater, do not go to see musical performances, and do not go to sports events.* A substantial minority of persons with disabilities never go to a restaurant, never go to a grocery store, and never go to a church or synagogue * * * The extent of non-participation of individuals with disabilities in social and recreational activities is alarming.

Id. (Emphasis added.)

To address these problems, Title(s) II and III of the ADA expressly prohibits disability-based discrimination by public accommodations and commercial facilities. See 42 U.S.C. §§ 12181-12189. Of particular relevance to this action, Title II and III mandate that so-called "newly constructed" public accommodations (i.e. - covered facilities designed or constructed for first occupancy after January 26, 1993) be "readily accessible to and usable by" persons with disabilities. See 42 U.S.C. § 12183(a)(1)("Section 303"); see also id. at § 12182(a) ("Section 302") (forbidding disability-based discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

5

or accommodations of any place of public accommodation").[1]  Stadiums are expressly encompassed within the ADA's non-discrimination mandate.

In 1991, pursuant to Congress' delegated regulatory authority, the Department of Justice, who issued final regulations - after notice-and-comment rulemaking - to govern new construction of, and alterations to, Title III-covered facilities.  See 28 C.F.R. §§ 36.101 - 36.608 & App. A; see also 56 Fed. Reg. 35,546 (July 26, 1991).  Of particular relevance to the instant case are the regulatory provisions governing newly constructed or altered public accommodations.  Section 36.308, which bears the heading "Seating in Assembly Areas," was promulgated in recognition of the fact that "individuals who use wheelchairs historically have been relegated to inferior seating" and forced to sit "separate from accompanying family and friends."  56 Fed. Reg. 35544, 35571 (July 26, 1991); see also 28 C.F.R. § 26.203 (public accommodations shall afford goods, services, and accommodations "in the most integrated setting").  To this end, § 36.308 mandates that newly constructed or altered assembly areas "shall be" fully compliant with the standards set forth in the Department of Justice's Standards for Accessible Design, codified as Appendix A to Part 36 of the Code of Federal Regulations.

While the Department's Standards set forth comprehensive accessibility requirements for various types and aspects of public accommodations and commercial facilities, the provision that forms the crux of this motion is ADA Accessibility Guidelines 4.33.3 ("Standard 4.33.3") -- the regulation governing the placement and location of wheelchair and companion seats in public assembly areas such as Stadiums.  Standard 4.33.3 provides, in pertinent part, that:

> [w]heelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public.  They shall adjoin an accessible route that also serves as a means of egress in case of emergency.  At least one companion fixed seat shall be provided next to each wheelchair seating area.  When the

_____

[1]  The ADA also requires all Title III-covered facilities altered after January 26, 1992 to be "readily accessible to and usable by" individuals with disabilities "to the maximum extent feasible."  42 U.S.C. § 12183(a)(2).  Miller Park was constructed and/or altered after January 1993.

6

seating capacity exceeds 300, wheelchair spaces shall be provided in more than one location.

28 C.F.R. Pt. 36, App. A § 4.33.3 (1994) (emphasis added)[hereinafter "Standard 4.33.3"].

Standard 4.33.3's comparability and integration mandates serve as the basis for Plaintiffs case.

The Americans with Disabilities Act fundamentally requires that no individual shall be discriminated against on the basis of disability.

The Plaintiffs' allege that Miller Park discriminated against them on the basis of disability by denying mobility impaired patrons in wheelchairs the full enjoyment of the facilities and accommodations of the stadium as compared to ambulatory fans, which is prohibited by Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. Sections 12181-12189. Americans with Disabilities Act, Accommodations Americans with Disabilities Act Accessibility Guidelines Section 4.33.3, 28 C.F.R. pt. 36, app. A, appears plainly to require that wheelchair patrons have something more than merely unobstructed views in seating adjacent to other patrons, that they have integrated seating which is at least qualitatively comparable to their ambulatory fans and access to the ballpark where ambulatory fans go.

Private entities, such as the Milwaukee Brewers, that engage in public accommodations, such as Miller Park are governed by Title III of the ADA and the co owner of Miller Park Southeast Wisconsin Professional Baseball District is governed under Title II, which applies to public entities. The remedies for violations of Title II of the ADA and Section 504 are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964., 42 U.S.C. § 2000d et seq. Barnes v. Gorman, 536 U.S. 181, 185, 122 S. Ct. 2097, 2100, 153 L.Ed. 2d 230 (2002). Declaratory and injunctive relief are proper remedies and have been granted in many such cases. See, e.g., Radaszewski ex rel. Radaszewski v. Maram, 383 F.3d 599, 606 (7th Cir. 2004); Flynn v. Doyle, 672 F. Supp. 2d 858, 880 (E.D. Wis. 2009).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . ." 42 U.S.C. § 12132. The implementing regulations include an "integration mandate," which requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). "Under this mandate, states are required to provide care in integrated environments for as many disabled persons as is reasonably feasible" Arc of Wash. State, Inc. v. Braddock, 427 F.3d 615, 618 (9th Cir. 2005) Accordingly, a public entity must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Karvelas v. Milwaukee County, 2012 U.S. Dist. LEXIS 126539, 2012 WL 3881162. In practice the only substantive defense that can be brought is that of structural impracticability. None of the issues complained about by Plaintiffs would render remedies unsound due to the defense of structural impracticability.

The remedies under the ADA for a violation of 42 U.S.C. § 12132 are contained in 42 U.S. C. § 12133, and include "[t]he remedies, procedures, and rights set forth in section 794a of title 29," which in turn incorporates the remedies, procedures, and rights set forth in a variety of other provisions of the U.S. Code including Section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16) and Title VI of the Civil Rights Act of 1964. Under Section 504, the remedies for a violation are the remedies and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) Finally, in a successful private case Federal Law does award attorney's fees under 42 U.S.C. § 2000a-3(b).

Plaintiffs seek injunctive relief under the ADA and the 2010 ADA Standards for Accessible Design ("2010 Standards") for the removal of barriers currently in place which interfere with their enjoyment of the game at Miller Park when compared to ambulatory fans.

## PARTIES

1. Plaintiff, Julie Withers is an adult wheel chair bound person with restricted mobility who lives in the State of Wisconsin. The Plaintiff is a long time Brewers fan that frequents Miller Park every season and uses her wheelchair for mobility and frequently visits Miller Park.

2. Plaintiff, Dawn Green is an adult wheel chair bound person with restricted mobility who lives in the State of Wisconsin. The Plaintiff is a long time Brewers fan that frequents Miller Park every season and uses her wheelchair for mobility and frequently visits Miller Park.

3. The Defendant Milwaukee Brewers Baseball Club ("Brewers") operates under a 30-year lease for Miller Park Stadium. The Defendant has exclusive options to extend the lease for 10-years beyond that.

4. The Brewers and their contractors have permitted barriers at the baseball park that have the effect of excluding patrons who are disabled, particularly the mobility impaired, from many areas of the park, including the best seats in the house. These impediments also interfere with the enjoyment of the baseball games, throughout the park, for patrons with disabilities who are confined to wheelchairs. The Brewers are forbidden under the ADA to simply make a few areas available to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F. Supp 698, 712 (D. Ore. 1997).

5. The Defendant, Milwaukee Brewers Baseball Club, Inc. is a Major League Baseball Team located at Miller Park, One Brewers Way Milwaukee, WI 53214 and with a registered agent for service of process known as Rick Schlesinger at the same address.

6. The Defendant, Southeast Wisconsin Professional Baseball Park District ("Park District") is a domestic Municipal entity with its principal office being located at Miller Park District, One Brewers Way, Milwaukee, Wisconsin 53214.

7. The Architects who designed the Miller Park's structure, are defendants HKS Inc., NBBJ LLC and Eppstein Uhen Architects, who have been dismissed from this lawsuit.

8. Miller Park is a Major League Baseball Park located just southwest of the intersection of Interstate *94* and Miller Park Way. It is home of the Milwaukee Brewers and was opened in 2001 as a replacement for Milwaukee County Stadium. The facility was built with $310 million of public funds. The stadium seats a capacity of 41,900 persons. The stadium is jointly owned by Southeast Wisconsin Professional Baseball Park District and the Milwaukee Brewers.

9. That the Brewers and the Park District added LED scoreboards in 2006 as well as the addition of a field level seating area in the corner of right field, currently known the Aurora Healthcare Bullpen.


## JURISDICTION

10. The United States District Court for the Eastern District of Wisconsin has jurisdiction of this action under the provisions of the Americans with Disabilities Act, Title II and III Section 12188(a)(1). The Complaint states a claim upon which relief may be granted against the Defendant under federal law.

11. Pursuant to 28 U.S.C. Sections 1331 and 1343, this Court has been given original jurisdiction.

12. The Defendants have discriminated against the individual Plaintiff, Julie Withers and Dawn Green who frequent Miller Park, in violation of Titles II and III, and the Plaintiff seeks relief under the ADA and set out where the Defendants have violated Standard 4.33.3.

## VENUE

13. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. Section 1391(b)(1) because the Defendants conduct regular and systematic business activity within Milwaukee County in The State of Wisconsin.

## STATEMENT OF FACTS

14. That Plaintiffs readopt and re allege paragraphs 1-13 as though fully set out herein.

15. The Defendants maintain and operate Miller Park for the purposes of viewing live Brewers' home games and for other events such as post game concerts.

16. The Plaintiffs are lifelong Brewers fans and have attended Brewers games in many different sections of the Miller Park Stadium and have encountered discrimination for accessible seating areas, line of sight and obstructed views of the playing field, access issues regarding parking and complimentary shuttles, outright access issues to the Aurora Health Care Bullpen and Helfaer Field, The Sausage Haus, access issues regarding the inter level ramp/emergency exit, elevators as well as a shortage of electrical outlets and charging stations.

17. The Plaintiffs, Julie Withers and Dawn Green, both of whom have mobility disabilities which limit them in the major life activity of walking and require them to use wheelchairs were denied the full enjoyment of Miller Park during Brewers' home games.

18. That Plaintiffs have encountered multiple violations of the ADA with respect to obstruction of view, inability to access seats comparable in quality to ambulatory fans and other issues regarding access,

while attending Brewers' baseball games. The effect is to segregate mobility challenged patrons in wheel chairs such as the Plaintiffs. The Brewers are forbidden under the ADA to simply make a few areas comparably available to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F.Supp. 698, 712 (D. Ore. 1997).

19. That the Plaintiffs have contacted Defendant Brewers on multiple occasions in the last several years in an attempt to remedy the outstanding violations they have encountered at Miller Park, however the violations persist.

## A.  Obstructed Views

20. That Plaintiffs face another season of Brewers Baseball without defendants performing the remedial steps necessary to ensure that wheelchair bound fans have lines of sight to the field of play, comparable access and a corresponding choice of admission prices comparable to those of ambulatory fans, currently Miller Park has barriers that are in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2.

21. The Brewers are forbidden under the ADA to simply make a few areas comparably available to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F.Supp 698, 712 (D. Ore. 1997). That due to inferior seating choices available to them at Miller Park, Plaintiffs have experienced, and will continue to experience, a diminished qualitative experience in value when compared to ambulatory fans situated in the same or similar situations due to obstructed views and other access issues.

22. In the majority of the accessible ADA seating at Miller Park the sightlines to the field are not qualitatively comparable to other general public seats (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

23. The majority of the disability accessible seating areas at Miller Park are in the back rows of designated sections and most offer wheelchair bound fans only obstructed views of the field (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2), which are not qualitatively comparable to that of the ambulatory patron.

24. Most of the Defendants' disability accessible seating has obstructed sightlines to the field that are not qualitatively comparable to those enjoyed by the general public (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

25. The majority of the Defendants wheelchair accessible seating at Miller Park only offers obstructed sightlines to the field, which are not qualitatively comparable to those available to ambulatory fans and which defeats the Plaintiffs purpose of going to a live game in the first place.

26. The Accessibility Guidelines (ADAAG) under Standard 4.33.3, require that there be greater points of commonality between lines of sight, and the Defendants do not comply with these regulations (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

27. Plaintiffs have purchased Brewer's tickets over the years at the lower level anticipating they would have a better experience than plaintiffs had in the Terrace Level, but the views were still obstructed and not qualitatively comparable to that of ambulatory fans.

28. The Defendants' disability accessible seats are typically located in the back of most rows, and deprive most disabled patrons full enjoyment of the sun on nice days (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

29. The sightlines for disabled seating at Miller Park are obstructed at almost every accessible seating area at field level for disability accessible seats (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

30. Miller Park's Loge Level disability accessible seats are also partially or completely obstructed views of the field in all sections and not qualitatively comparable to seating for ambulatory fans (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

31. On other recent visits the Plaintiffs' view of the scoreboard and fly balls were obstructed due to low ceilings and hanging equipment not qualitatively comparable to seating for ambulatory fans (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

32. The Plaintiffs outings to Brewers games have been made unpleasant because they couldn't see the entire game and scoreboard, like ambulatory fans could and allege that seeing the game is the most fundamental reason anyone pays money to go to the Brewers game. The Plaintiffs' enjoyment of live games has decreased.

33. In an online review similarly situated disabled patrons gave one star due to sightline obstructions:

    > One patron wrote, "*Don't waste your hard-earned money on these lousy seats. You can't see the scoreboard, center field, or right field. These should be sold as obstructed view seats at lesser price, but they're not. If these are the only ADA seats available stay home.*" See https://aviewfrommyseat.com. The particular patron sat in section 442, 4ADA, 16. However, online reviews of ADA seating revealed obstructed sightlines in sections 126,29,1, 415,7,18, 342,1,10, 423,14,3, and 104, (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

34. Miller Park does offer disability accessible seats with unobstructed views in Terrance Level, however these tickets are sold out most of the time. This seating configuration discriminates against

disabled people in wheel chairs, in violation of 42 U.S.C. Section 12182 resulting in discriminatory effects of architectural barriers relegation to lesser services (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2). The Brewers are forbidden under the ADA to simply make only a few areas which are qualitatively comparable to the ambulatory fan as they are to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F.Supp 698, 712 (D. Ore. 1997).

35. The Field level has only a small section of qualitatively comparable seats for the disabled that have unobstructed views (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

36. Even in areas that are wheelchair accessible and present no obstruction of view to the wheelchair bound fan, these areas, where they exist, many are too few in number and even many of those seats have diminished viewing angles of the game comparably available to the ambulatory public (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).


**B. Ticket Sales:**

37. It has been Plaintiffs experience(s) that when tickets are sold for the accessible seats the Brewers Ticket Office does not inquire if the tickets are being purchased for persons with mobility disabilities.

38. That it has been the Plaintiffs' experience that the practice of Miller Park's box office is to not ask potential customers whether they are mobility disabled (to qualify for a purchase the seating) and as a result, wheelchair bound fans are effectively barred from purchasing these tickets on high attendance dates.

39. The ADA requires government and private organizations such as Miller Park to provide tickets for accessible seating to individuals with disabilities at events where tickets are for assigned seats. Any

government or private entity that sells tickets for a single event or a series of events must modify its policies, practices, or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating:

    a. During the same hours as other patrons;

    b. During the same stages of ticket sales, including but not limited to, pre-sales; promotions, lotteries, waitlists, and general sales;

    c. Through the same methods of distribution;

    d. In the same types and numbers of ticketing sales outlets, including telephone service, in-person ticket sales at the facility, or third-party ticketing services; and

    e. Under the same terms and conditions as other tickets sold for the same event or series.

    In violation of Standard 4.33.3.

**C. Seating and Integration:**

40. The ADA requires that wheelchair spaces be dispersed horizontally around the field of play 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2), which the Defendants have failed to do.

41. The ADA requires that wheelchair spaces be dispersed vertically throughout the field (2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2), which the Defendants have failed to do.

42. The Defendants have a duty to comply with the 2010 Standards for Accessible Design for sport facilities as those standards relate to horizontal and vertical dispersal of disabled seating and they have breached that duty causing the Plaintiffs harm.

43. The Defendants have not provided wheelchair using patrons with the total number of qualitatively equivalent wheelchair seats in luxury boxes, club boxes, and/or suites required by the ADA.

44. The Miller Park luxury box, club box, or suite areas are among the ballpark's most exclusive seating sections and feature incredible views, first class amenities and complimentary food and beverage, yet wheelchair bound fans cannot fully enjoy these experiences the same way ambulatory fans do, due to qualitatively incomparable seating and access issues. The Brewers are forbidden under the ADA to simply make a few limited areas where seating is comparably available for the disabled as it is for the ambulatory and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F.Supp 698, 712 (D. Ore. 1997).

45. Furthermore, Plaintiffs allege that Miller Park has few if any side arm rests which can be lifted or removed to allow a disabled fan to transfer them self from a wheelchair onto the seat (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2) creating a further barrier to access.

46. That line of sight issues, and Defendants failure to properly disburse the general admission seating for wheel chair access throughout the first, second and third levels of general admission within Miller Park are ongoing violations of Standard 4.33.3.

47. That Plaintiffs have encountered barriers where the Defendants have failed to provide people with physical disabilities, particularly in wheelchairs, with seating with a line of sight comparable to those for members of the general public in the following sections:

    a.    101;

    b.    104;

    c.    105;

    d.    110;

    e.    118;

    f.    124;

    g.    126;

h.   128 ;

i.   129;

j.   206;

k.   209;

l.   213;

m.   214;

n.   220;

o.   221;

p.   222;

q.   223;

r.   225;

s.   228;

t.   230;

u.   232;

v.   238;

w.   253;

x.   254;

y.   255;

z.   256;

aa.   410;

bb.   412;

cc.   414;

dd.   416;

ee.  418;

ff.  420;

gg.  422;

hh.  424;

ii.  426;

jj.  428;

kk.  430;

ll.  432;

mm. 434;

nn.  436;

oo.  438;

pp.  The Aurora Healthcare Bullpen;

qq.   Northwest Mutual Legends Club;

rr.   Johnson Controls Stadium Club;

(in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

48. That additionally, at sections 216-221 a disabled patrons' view is blocked when people stand up (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

49. The ADA Standards for facilities such as Miller Park, expressly state that the minimum number of wheelchair spaces required for luxury boxes, club boxes, and suites must be calculated individually for each box or suite (2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

50. The minimum number of wheelchair spaces required is based on the total number of seats provided in all such boxes, and at least 20% of the boxes must contain wheelchair spaces.

51. That the Aurora Healthcare Bullpen does not provide any access to wheelchair bound patrons which violates the Plaintiffs' right to have a qualitatively comparable experience of a Brewers game as ambulatory fans do.

**D. Access Issues:**

52. The ADA requires a single wheelchair space to be 36" wide, while two wheelchair spaces adjacent to one another need be 33" wide each (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.2 and 802.1.1.3).

53. The ADA seating standards require a 36" minimum width for wheelchair spaces and many are not at Miller Park (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.2 and 802.1.1.3).

54. The ADA standards require that wheelchair spaces must be on an accessible route but may not overlap another wheelchair space or circulation path (in violation of 2010 Standards 206.2.4, 403.5.1).

55. At Miller Park wheelchair patrons with disabilities must travel through other accessible seats to access their assigned location (in violation of 2010 Standards 802.1.2, 802.1.3 and 802.1.4).

56. When the Plaintiffs measured random wheelchair spaces at multiple different locations, many of them were smaller than the required minimum.[2] (in violation of 2010 Standards 802.1.2).

57. The Plaintiffs' measurements included seating in front of the wheelchair spaces to determine width, which is inconsistent with ADA Standards (in violation of 2010 Standards 802.1.2).

58. The depth of the Defendants' ADA seating areas is not 60" and access in these areas should not be through other wheelchair seats (in violation of 2010 Standards 802.1.3).

---

[2] One disabled consumer spoke out about his first visit to Miller Park. He was seated in 442 which he said, "were not bad seats." However, the bar was really close to his seat and his leg were crowded. Also, he had seats 1,2, and 3 and the only way into seat 1 and 2 was through seat 3, which was handicap seating space. *See www.alltheballparks.com/2009/06/accessibility-review-miller-park.html*

59. The Defendant cannot demonstrate that it is "structurally impracticable" to bring this issue in compliance with the 2010 ADA Accessible Design Standards.

E. **Access Issues - Parking and Complimentary Shuttle:**

60. Regarding disabled parking spaces, even if Miller Park has the requisite amount of disabled parking places, typically these spaces and the parking lots where they are located tend to fill up very quickly and as a result a wheelchair bound fan is often left parking at a distant lot, from which no accessible shuttle service is available because of their disability. There shuttles, but they do not accommodate disabled patrons.

61. That in some places the disabled parking places are on an incline, making these spaces too steep to be of practical value to wheelchair bound fans (in violation of 2010 Standards 502.4 and 502.6).

62. That additionally, Miller Park offers a complimentary shuttle service for fans who park at distant parking lots located at Miller Park and elsewhere on the grounds.

63. The shuttle service is typically for ambulatory patrons, or in the alternative, does not offer a comparable shuttle service for wheelchair bound fans.

64. The non accessible complimentary shuttle produces the absurd result that where ambulatory fans are given a ride to and from their distant parking spaces, the wheelchair bound fan is left behind and must expend considerable time and effort to get inside of Miller Park, which results in a greatly diminished experience for the wheel chair bound fan who is likely to miss out on a significant part of the game play because they have been left behind by the shuttle and are left wheeling their wheelchair towards Miller Park.

65. The reason for this is due to the shuttle service equipment which is essentially large golf carts that have no capacity to transport a wheelchair bound fan.

**F. No Access to Aurora Health Care Bullpen**

66. The Aurora Health Care Bullpen at Miller Park is a unique area located at field level in right field that does not have ADA standard seating or access at field level (in violation of Standard 4.33.3).

67. There is no wheel chair access to the Aurora Healthcare Bullpen at Miller Park which gives non-chair using patrons a player's view of the action of the game, but deprives a wheelchair bound fan from the same enjoyment and cannot be considered qualitatively comparable.

68. The Aurora Health Care Bullpen is located at field level in right field that does not have ADA standard access or seating (in violation of Standard 4.33.3 and in violation of 2010 Standards 302.1, 403.5.1, 403.5.3, 403.3, 405.5, 405.7.2, 405.7.3, 405.8, 505.4, 505.3, 505.6, 505.7.1, 405.9.1, 405.9.2, 216.6, 404.2.4).

69. The Aurora Health Care Bullpen at Miller Park gives non-wheel chair patrons a player's view of the action of the game, but bars the wheel chair bound patron from entering.


**G. Access Issues- Inter Level/Emergency Exit Ramp(s):**

70. That additionally, within the stadium itself there is are inter level/emergency ramps which fans may use to go from level to level and upon information and belief the ramp is intended to be used in cases of emergency to exit Miller Park (in violation of 2010 Standards 405.4, 406.1, 405.3 and 405.2).

71. That the main inter level/ emergency ramp inside Miller Park is too steep in incline for wheelchair bound fans to navigate (in violation of 2010 Standards 405.4, 406.1, 405.3 and 405.2).

72. That aside from being difficult to navigate due to its incline, the ramp itself would be of little value to a wheelchair bound fan in the case of an emergency (in violation of 2010 Standards 405.4, 406.1, 405.3 and 405.2).

**H. Helfaer Field and The Sausage Haus:**

73. That Helfaer Field, a miniature little league stadium next to Miller Park, also run by the Defendants, has no wheelchair seating areas (in violation of Standard 4.33.3 and in violation of 2010 Standards 302.1, 403.5.1, 403.5.3, 403.3, 405.5, 405.7.2, 405.7.3, 405.8, 505.4, 505.3, 505.6, 505.7.1, 405.9.1, 405.9.2, 216.6, 404.2.4).

74. That the Sausage Haus has no wheel chair access seating and other amenities (in violation of Standard 4.33.3 and in violation of 2010 Standards 302.1, 403.5.1, 403.5.3, 403.3, 405.5, 405.7.2, 405.7.3, 405.8, 505.4, 505.3, 505.6, 505.7.1, 405.9.1, 405.9.2, 216.6, 404.2.4).

**I. Access Issues-Elevator for the Disabled**

75. That additionally, while Miller Park does offer a disabled accessible elevator for wheelchair bound or mobility challenged fans, it is awkward and difficult contraption to operate. Typically the disabled elevator, in practice, requires two (2) people to operate, the door is difficult to open and close, the disabled fan must continuously press the button which operates it, typically there is no attendant to monitor or assist the disabled fan with ingress and egress and typically the disabled fan must first call for an usher for assistance (in violation of 2010 Standards 407.3.3 and 410.1).

**J. Electrical Outlets and Cell Phone Charging Stations:**

76. That Miller Park is required by the ADA to provide a readily accessible electrical outlet in every section; however, some or most sections do not have a readily accessible electrical outlet.

77. That similar to electrical outlets, Miller Park does not offer a sufficient amount of disabled access cell phone charging stations throughout the facility.

**K. Construction and Modification(s) of Miller Park:**

78. Miller Park was built after 1993, and, therefore, must be in full compliance with the ADA Standards.

79. The Defendants' have made several alterations and/or modifications since opening in 2001.

80. In 2014, the Defendants' made alterations and/or modifications to the Toyota Tundra Territory to enhance the features.

81. Notwithstanding the Defendants' duty to comply with the ADA 2010 Accessible Design Standards, the Defendants rebuilt and altered the Toyota Tundra Territory's seating at Miller Park in violation of the ADA.

82. In 2017, the Defendants spent nearly $20 million on renovations on concession stands and bars.

83. The Defendants improved the floor insulation for the stadium administrative office at a cost of $39,900.

84. The Defendants improved the new carpet at Clubhouse Level at a cost of $268,600.

85. The Defendants improved LED ribbon board encircling seating bowl cost $3.1 million.

86. The Defendants improved the High Definition scoreboard at a cost of $5.9 million.

87. The Defendants installed new flooring in the dugout(s) at a cost of $84,700.

88. The Defendants improved the retractable windows on Terrace Level at a cost of $234,200.

89. The Defendants improved the Matrix board on the billboard on *Hwy* 94 at a cost of $484,800.

90. The Defendants improved their ticket scanning at a cost of $121,000.

91. The Defendants moved drains, throughout Miller Park, to alleviate bad odor at a cost of $41,160.

92. The Defendants improved the sound system at a cost of $370,222.

93. The Defendants improved plank insulation at a cost of $39,900.

94. The Defendants Salvaged the matrix board from old Stadium at a cost of $484,800.

95. The Defendants improved anti-slip traffic epoxy at a cost of $77,300.

96. The Defendants made improvements to the Press box kitchen at a cost of $13,205.

97. The Defendants replaced carpet in 19 Founder's Suites at a cost of $36,800.

98. In 2014, the Defendants made alterations to the Toyota Tundra Territory to enhance its features.

99. As part of these alterations, the Defendants' ADA seating locations were no longer reserved for wheelchair or mobility impaired patrons.

100. With regard to new construction and alterations at Miller Park after 2010, the Defendants have a duty to comply with the 2010 ADA Standards for Accessible Design

101. The Defendants have not removed these barriers from Miller Park and it is readily achievable for the Defendants to do so.

102. The Plaintiffs believe that compliance is readily achievable by the Defendant because of its numerous improvements in the past.

103. As demonstrated by the many alterations, the Defendants have the financial ability to better accommodate disabled patrons.

**L. Continued Discrimination**

The Plaintiffs will continue to suffer discrimination, unless and until the Defendants are compelled to comply with ADA standards and remove barriers which currently frustrate a wheel chair bound fans enjoyment of the Brewers game in a qualitatively comparable way. The Brewers are forbidden under the ADA to simply make a few areas available to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F.Supp 698, 712 (D. Ore. 1997).

104. The Defendants have breached their duty under the ADA, to furnish its facilities and accommodations to the public without discriminatory barriers to wheel chair bound fans.

105. The Defendants have discriminated against wheelchair-using patrons in violation of ADA, the Plaintiffs and its members allege that Miller Park does not accommodate disabled fans under the Americans with Disabilities Act Accessibility Guidelines Section 4.33.3, 28 C.F.R. pt. 36, app. A, 4.33.3, because wheelchair users' unobstructed views and access issues of the Brewers games are not comparable to that of ambulatory patrons.

106. That the Plaintiffs have communicated with Defendant Brewers for multiple years about sight and access issues and while some nominal improvements were made, outstanding violations of the ADA persist.

107. During their communications with The Brewers, Plaintiffs have advocated the removal of the discriminatory barriers they face and the remedies The Brewers must achieve for wheelchair bound members to get the full enjoyment of the services Miller Park offers its customers.

108. For instance, the Plaintiffs communications with the Brewers advocated sales of accessible seating and gave notice that many wheelchair bound fans have difficulties obtaining Terrace reserved seating.

109. The Defendants were given notice by Plaintiffs previously by way of correspondence and thus far Defendants have not complied with ADA standards, notably under ADAAG Standard 4.33.3 and are therefore in breach.

## Count 1
### ADA Line of Sight Violations

110. That Plaintiffs readopt and reallege Counts 1 – 109 as though fully set out herein.

111. The Defendants are required under Standard 4.33.3 to provide wheelchair areas that are an integral part of any fixed seating plan and shall be provided so as to provide fans in wheelchairs a choice of admission prices and lines of sight comparable to those available for ambulatory fans.

112. The Defendants' seating plan at Miller Park does not provide disabled patrons with choices of seating locations and view angles that are qualitatively comparable to and substantially equivalent to, or better than, the choices of seating locations and viewing angles available to other patrons in the general seating areas, the Aurora Health Care Bullpen and at other places and locations (in violation of 2010 Standards 221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

113. The ADA requires that no individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations. 42 U.S.C. Section 12182(a).

114. The Plaintiffs allege that Defendants fail to comply with and are in breach of the ADA as set out in Section 4.33.3, 28 C.F.R. Pt. 36, App. A, 4.33.3.

## Count 2
### Integration Requirement(s)
### Violations of Seating and Access

115. That Plaintiffs readopt and re allege paragraphs 1-114 as though fully set out herein.

116. The ADA requires that wheelchair spaces be an integral part of the seating plan at Miller Park. The Brewers are forbidden under the ADA to simply make a few areas available to the disabled and thereby create areas within Miler Park that are a "Wheelchair Ghetto." (See *Independent Living Resources v. Oregon Arena Corp.* 982 F. Supp 698, 712 (D. Ore. 1997).

117. Many of Miller Park wheelchair accessible seats do not meet the minimum required width of the 2010 ADA Accessible Design Standards. (in violation of 2010 Standards 802.1.2, 802.1.3 and 802.1.4).

118. The Defendants have a duty to comply with the ADA Standards for Accessible Design at Miller Park and the Defendants have breached that duty causing the Plaintiffs harm.

119. The ADA places a duty on the Defendants that wheelchair spaces be an integral part of the seating plan at Miller Park and Defendants have breached that duty causing the Plaintiffs harm.

120. The ADA places a duty on the Defendants that wheelchair spaces be dispersed horizontally around the field of play and Defendants have breached that duty causing the Plaintiffs harm.

121. The ADA places a duty on Defendants that wheelchair spaces be dispersed vertically around the field of play and Defendants have breached that duty causing the Plaintiffs harm.

122. Additionally, the Defendants' breached their duty under Standard 4.33.3 in their construction or alteration of Miller Park, wheelchair access was not an integral part of the Aurora Health Care Bullpen seating plan. (in violation of Standard 4.33.3 and in violation of 2010 Standards 302.1, 403.5.1, 403.5.3, 403.3, 405.5, 405.7.2, 405.7.3, 405.8, 505.4, 505.3, 505.6, 505.7.1, 405.9.1, 405.9.2, 216.6, 404.2.4221.2.1, 221.2.3, 802.2.1.1 and 802.1.1.2).

123. The Aurora Health Care Bullpen does not provide disabled patrons with the total number of wheelchair seats, or access to them as required by the ADA Defendants have breached that duty causing the Plaintiffs harm..

124. The Defendants do not offer mobility disabled fans access to the Aurora Health Care Bullpen Area and Defendants have breached that duty causing the Plaintiffs harm.

125. The Defendants have a duty to comply with the Accessible Design Standards and Defendants have breached that duty causing the Plaintiffs harm.

126. The Defendants cannot demonstrate that it is "structurally impracticable" to do so.

127. In the construction, modification and/or alteration of Miller Park, the Defendants breached their duty to make wheelchair spaces an integral part of their seating plan as defined under Standard 4.33.3.

128. The ADA requires that no individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations. 42 U.S.C. Section 12182(a). The Defendants have breached that duty causing the Plaintiffs harm.

129. The Plaintiffs allege that Defendants fail to comply with, and are in breach of, the ADA as set out in Standard 4.33.3.


**Count 3**
**Integration Requirement**
**Violations of ADA Access Requirements**

130. The Plaintiff restate and reallege the allegations 1 - 129 as though fully set out herein.

131. The 2010 ADA Standards for Accessible Design were published in the Federal Register on September 15, 2010, and became mandatory March 15, 2012.

132. The 2010 ADA Standards for Accessible Design became mandatory and enforceable to all new construction, renovations, modifications, alterations, and barrier removal.

133. With regard to the numerous alterations, renovations, and modifications after March 15, 2012 at Miller Park, the Defendants have a duty to comply with the 2010 ADA Standards for Accessible Design, Defendants have breached that duty causing the Plaintiffs harm.

134. The ADA, Accommodations Americans with Disabilities Act Accessibility Guidelines Section 4.33.3 provides that in "assembly areas," wheelchair areas shall be an integral part of any fixed

seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public Defendants have breached that duty causing the Plaintiffs harm.

135. That Plaintiffs have encountered diminished or barred access as set out herein as to seating, views of the field of play, shuttle service, ramp navigation, elevator use, use of the parking lots and shuttle service, outlying building access and power and cell phone charging.

136. The Plaintiffs allege that Defendants fail to comply with ADAAG Section 4.33.3, 28 C.F.R. Pt. 36, App. A, 4.33.3.

137. The ADA requires that no individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations. 42 U.S.C. Section 12182(a).

138. The Plaintiffs allege that Defendants fail to comply with, and are in breach of, the ADA as set out in Section 4.33.3, 28 C.F.R. Pt. 36, App. A, 4.33.3.

## RELIEF SOUGHT

The remedies for violations of Title II and Title III of the ADA are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964., 42 U.S.C. § 2000d et seq. Barnes v. Gorman, 536 U.S. 181, 185, 122 S. Ct. 2097, 2100, 153 L.Ed. 2d 230 (2002). Declaratory and injunctive relief are proper remedies and have been granted in many such cases. See, e.g., Radaszewski ex rel. Radaszewski v. Maram, 383 F.3d 599, 606 (7th Cir. 2004); Flynn v. Doyle, 672 F. Supp. 2d 858, 880 (E.D. Wis. 2009);

Because the Defendant's discriminatory conduct presented and still presents a real and immediate threat of current and continuing future violations, declaratory and injunctive relief are appropriate

remedies. Congress has authorized courts to issue "orders to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities."

**FOR THE FOREGOING REASONS,** the Plaintiffs seek relief under the Section(s) of the ADA that requires that no individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations. 42 U.S.C. Section 12182(a).

Plaintiffs pray that the Court order the Defendants to make Miller Park compliant under the ADA as set out in Section 4.33.3, 28 C.F.R. Pt. 36, App. A, 4.33.3 and that Plaintiffs may receive equitable relief in the form a of a Court order requiring the Defendant to remove all discriminatory barriers that exist at Miller Park, and award reasonable attorney's fees incurred in bringing this action.

Dated this 3rd of July, 2019

Attorneys for Plaintiffs,

*/s/ Atty. Paul A. Strouse*
Paul Strouse- *Attorney At Law*
SBN: 1017891
Thomas Napierala-*Attorney at Law*
SBN: 1011811

Prepared By:

The Law Offices of Paul Strouse
413 North 2nd Street Suite #150
Milwaukee WI 53203

The Law Offices of Thomas Napierala
413 North 2nd Street Suite #150
Milwaukee WI 53203