UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JULIE WITHERS and
DAWN GREEN,
      Plaintiffs,

v.                                           Case No. 19-C-0115

MILWAUKEE BREWERS
BASEBALL CLUB, et al.,
      Defendants.

## DECISION AND ORDER

Plaintiffs Julie Withers and Dawn Green allege that Miller Park, home of the Milwaukee Brewers, does not comply with certain accessibility requirements of the Americans with Disabilities Act. Their central claim is that the park's wheelchair-accessible seating is not comparable to the seating available to ambulatory patrons. The plaintiffs allege that the accessible seating areas have obstructed lines of sight to the playing field and are not dispersed around the park in a manner that gives wheelchair-bound patrons a range of seating options comparable to the options available to those without wheelchairs. In addition to their central claim, the plaintiffs raise several other issues: (1) that the park's disabled parking spaces are too steep; (2) that the park's complimentary parking shuttle service does not accommodate wheelchairs; (3) that an area of the park known as the Aurora Health Care Bullpen is not accessible to wheelchairs; (4) that the park's inter-level/emergency-exit ramps are too steep for wheelchairs; (5) that two areas located just outside the park—Helfaer Field and The Sausage Haus—have no wheelchair seating; (6) that the park's accessible

elevator is awkward and difficult to operate; and (7) that the park does not have a sufficient number of accessible electrical outlets and phone-charging stations.

To prove their claims, the plaintiffs intend to have their expert witness inspect the park and measure and photograph the areas they allege are not in compliance with the ADA. The plaintiffs first notified the defendants of their intent to inspect the park in April 2019, during the parties' conference under Federal Rule of Civil Procedure 26(f). Since that time, the parties have been negotiating the terms under which the inspection will take place. On July 25, 2019, the plaintiffs attempted to serve the defendants with a formal demand to inspect the park under Federal Rule of Civil Procedure 34(a)(2). However, plaintiffs' counsel neglected to sign the demand, and therefore the defendants had no obligation to respond to it. *See* Fed. R. Civ. P. 26(g)(2).[1] Nonetheless, defendants' counsel attempted to confer with plaintiffs' counsel about the demand. The defendants were concerned about the breadth and length of the proposed inspection, in that the plaintiffs sought access to the park for 243 hours over the course of 24 days and proposed to inspect areas of the park that they did not allege were noncompliant with the ADA in their complaint. After the plaintiffs refused to narrow their demand, the defendants filed a motion for a protective order that seeks to limit the inspection to a single day and to the areas of the park containing accessible seating and the routes to and from the seating areas. I address that motion in this order.

I also address the plaintiffs' motion to extend their deadline to provide their expert's report until after his inspection has been completed. In particular, the plaintiffs contend that part of their expert's inspection must occur during a live game, and they

---

[1] Plaintiffs' counsel eventually served a signed demand on September 16, 2019.

note that no games will be played until the baseball season begins in the Spring. Thus, they seek to extend their deadline until after their expert can observe a live game. (The plaintiffs concede that the rest of the inspection can occur during the off season.) The defendants contend that plaintiffs' expert has no need to inspect the park during a live game and that therefore the expert's report can be disclosed before the baseball season begins.

The defendants' motion for a protective order arises under Federal Rules of Civil Procedure 26(c) and 26(b)(1). Under the latter rule, a party may use the discovery process to obtain information only if the information "is relevant to [the party's] claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, the defendants contend that the scope of plaintiffs' inspection demand goes well beyond the accessibility issues alleged in the complaint and that the proposed duration of the inspection is disproportionate to the needs of the case. As explained below, I agree with the defendants in part. However, much of the demand relates to matters the plaintiffs have identified in their amended complaint. As to these matters, the inspection will be allowed. I conclude that a reasonable time for the expert to complete an inspection that is limited to the ADA violations alleged in the complaint is 40 hours.

The first area the plaintiffs request to inspect involves the parking lots, parking shuttle service, and other areas located outside the stadium itself. I find that this part of the request is within the scope of the complaint and proportional to the needs of the case. The plaintiffs allege that parking at the stadium does not comply with the ADA because some disabled parking spaces are located in steep areas not navigable by persons in wheelchairs. Am Compl. ¶ 61. The plaintiffs also allege that the

complimentary shuttle service is not wheelchair accessible. *Id.* ¶¶ 60, 62–65. Further, the plaintiffs allege that other areas located outside the stadium—Helfaer Field and The Sausage Haus—are not wheelchair accessible. *Id.* ¶¶ 73-74. Given these allegations, an inspection of these areas is relevant to the plaintiffs' claims. Moreover, the burden on the defendants to permit inspection of these areas will be slight. Because the parking areas are located outside the park and accessible to anyone, the defendants do not need to supervise or assist with this part of the inspection. The defendants may need to make the shuttles available and permit access to Helfaer Field and The Sausage Haus, but the burden to supervise this part of the inspection will be minimal. Thus, plaintiffs' expert may inspect the parking lots, the shuttles, Helfaer Field and The Sausage Haus.

Turning to the stadium itself, the plaintiffs first demand to inspect the entrances. However, their complaint does not allege that the park's entrances do not comply with the ADA. Instead, the complaint focuses on seating areas, the elevator, and inter-level ramps. Thus, a request to inspect the entrances is not relevant to the plaintiffs' case and will not be allowed.

Next, the plaintiffs request to inspect the designated accessible seating areas and to inspect sample non-accessible seating areas for comparison. This request relates to the plaintiffs' primary claim and is proportional to the needs of the case. Therefore, it will be allowed. The plaintiffs also request to inspect seating areas in luxury boxes, club boxes, suites, and the Aurora Health Care Bullpen. The defendants contend that luxury boxes, etc., are outside the scope of the complaint. However, the complaint alleges that seating in luxury boxes, club boxes, and suites does not comply with the ADA. Am. Compl. ¶¶ 43–44. The plaintiffs allege that they have encountered barriers at

4

the Aurora Health Care Bullpen and at two club boxes—the Northwestern Mutual Legends Club and the Johnson Controls Stadium Club. *Id.* ¶¶ 47pp–47rr. Thus, the plaintiffs may inspect luxury boxes, club boxes, suites, and the Aurora Health Care Bullpen.

The plaintiffs next request to inspect "all ramps." To the extent this request relates to the inter-level/emergency-exit ramps identified in the complaint, *see* Am. Compl. ¶¶ 70–72, I will allow it. But the plaintiffs may not spend time inspecting ramps that do not relate to their claim that the inter-level/emergency exit ramps are too steep.

The plaintiffs next request to inspect emergency exits. However, the plaintiffs have not alleged that the emergency exits do not comply with the ADA, and therefore this part of their request is not relevant to their claims and will not be allowed.

The plaintiffs next request to measure "protrusion and dimensions of objects through circulation paths appurtenant to public areas." This request is outside the scope of the complaint. The plaintiffs do not allege that their ability to maneuver through the stadium has been hindered by objects in circulation paths. Instead, the only "circulation" issues raised in the complaint are that certain ramps are too steep and that routes to the wheelchair-accessible seats impermissibly overlap each other. *See* Am. Compl. ¶¶ 54–55. Thus, the plaintiffs may inspect the allegedly too-steep ramps and the circulation paths to the accessible seats. They may not inspect the park generally to identify circulation issues that they have not already pleaded. I also note that an inspection of circulation in every public area of the park would be unduly burdensome and disproportionate to the needs of the case.

The plaintiffs next request to inspect the park's elevators. This request is relevant to their claim that the handicap-accessible elevator is awkward and difficult to use, and I will permit them to inspect the elevators for compliance with the ADA.

The plaintiffs next propose to inspect interior doors and entrances to all public areas. This request is outside the scope of the complaint and unduly burdensome. The plaintiffs do not allege that the interior doors and entrances to public areas are non-compliant, and inspection of all such doors and entrances would be extremely time consuming. Accordingly, the inspection will not include all interior doors and entrances to public areas.

The plaintiffs next propose to inspect all food and beverage concessions and memorabilia shops. However, the plaintiffs do not allege that these areas of the stadium are noncompliant, and therefore they may not inspect them. I note, however, that the plaintiffs have alleged that two areas of the stadium that serve food and beverages—the Johnson Controls Stadium Club and the Northwestern Mutual Legends Club—do not have accessible seating with appropriate lines of sight to the field. As noted above, the plaintiffs may inspect these two areas to address the alleged seating and line-of-sight issues.

The plaintiffs next request to inspect access to the Aurora Health Care Bullpen and "Bernie's slide experience." As noted above, the complaint pleads that access to the Aurora Bullpen is non-compliant, and therefore the plaintiffs may inspect it. However, the complaint does not allege that access to Bernie's slide experience is non-compliant, and therefore no inspection of that area will be allowed.

6

Finally, the plaintiffs propose to inspect the stadium's restrooms. However, the plaintiffs have not alleged that the restrooms are non-compliant, and therefore no inspection of the restrooms will be allowed.

As for the amount of time that will be permitted for the inspection, I conclude that one week (40 hours) is sufficient to enable the plaintiffs to complete a reasonable inspection that is proportional to the needs of the case. The plaintiffs have not explained why they would need more time than this, and I can't imagine that a reasonable inspection of the areas identified in the complaint would take longer. The defendants note that, in one of the plaintiffs' expert's other cases, he completed an inspection of a baseball park in only a single day. *See* Wronski Decl, ¶ 24, Ex. K. Here, I will not limit the inspection to a single day. The inspection will encompass many different areas of the park and areas outside the park, and I think it is unrealistic for the expert and his team to complete all the work in a single day. A week strikes me as an appropriate amount of time in light of the proper scope of the inspection and the needs of the case. And, as I already noted, the defendants likely do not need to supervise the inspection of the parking areas and other areas outside the park. Thus, the defendants likely will not have to expend resources supervising the expert for the entire 40 hours.

I also conclude that the plaintiffs are entitled to inspect the park during a live game. The complaint alleges that sight lines from the accessible seats are poor in part because of standing spectators and the inability to see fly balls. *See* Am. Compl. ¶¶ 31, 48. An inspection during a live game is relevant to proving these allegations. Thus, in addition to the 40 hours of inspection time I have already granted, I will allow the plaintiffs' expert to conduct an inspection during one live game. The expert must not

disturb spectators or otherwise interfere with the normal functioning of the ballpark during the game. Because the Brewers will not host a game until the Spring, I will grant the plaintiffs' motion to extend the expert-discovery deadline for this witness only. (Any other plaintiff expert witnesses must be disclosed by the existing deadline. Moreover, the expert's 40-hour inspection must occur during the offseason.) The parties should be able to arrange for the plaintiffs' expert to attend a game during the first month of the season, and therefore I will extend the deadline for the plaintiffs to disclose the report of this witness until April 30, 2020. To the extent that delaying the report until the end of April affects other pretrial deadlines, such as for dispositive motions or for the defendants' rebuttal expert report, the parties may confer and submit a proposal for new deadlines.

Accordingly, **IT IS ORDERED** that the defendants' motion for a protective order (ECF No. 57) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the expert inspection is limited to 40 hours plus the time it takes to observe one live game, and that the scope of the inspection is limited to the areas alleged to be non-compliant in the amended complaint, as explained above. In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an extension of time (ECF No. 64) is **GRANTED** to the extent that the deadline for the plaintiffs to disclose the expert report of James Terry is extended to **April 30, 2020**.

Dated at Milwaukee, Wisconsin, this 28th day of October, 2019.

s/Lynn Adelman_____
LYNN ADELMAN
District Judge